UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

STUDCO BUILDING SYSTEMS US, LLC,

                              Plaintiff,

                                                        Case # 19-CV-6819-FPG

v.

                                                        DECISION AND ORDER

1ST ADVANTAGE FEDERAL CREDIT UNION, et al.,

                              Defendants.
───────────────────────────────

## INTRODUCTION

Plaintiff Studco Building Systems US, LLC ("Studco") brings this action against Defendants 1st Advantage Federal Credit Union ("Advantage") and John Doe, alleging that Advantage assisted John Doe in a fraudulent scheme targeting Studco. In January 2020, Advantage moved to dismiss the complaint. ECF No. 9. In response, Studco amended its complaint. ECF No. 11. Advantage now moves to dismiss the amended complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 16. In the alternative, Advantage requests that this case be transferred to the Norfolk Division of the Eastern District of Virginia. ECF No. 16-5 at 12-13. The Court declines to address the issue of personal jurisdiction and instead transfers this case pursuant to 28 U.S.C. § 1404(a). Accordingly, and to that extent, Advantage's motion to dismiss the amended complaint is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are from the complaint, unless otherwise noted. Advantage is a federal credit union based in Virginia. In August 2018, John Doe opened a personal checking account

with Advantage at one of its Virginia branches. Although purportedly required to do so under federal and state law, Advantage did not verify Doe's identity, address, the source of the funds to be deposited into the account, or even his eligibility to become a member of Advantage.

Thereafter, Doe used the checking account as part of a scam against Studco. Studco is a manufacturer of "premium building systems for commercial and residential construction industries" and is based in Webster, New York. ECF No. 11 at 2. Doe sent emails to Studco that were "designed to look like legitimate emails from a Studco supplier." ECF No. 20-11 at 14. These emails "directed Studco to transmit funds" intended for that supplier to Doe's personal checking account. *Id.* Studco complied with Doe's request, and sent multiple payments to Doe's account, which ultimately totaled $558,868.17. Using cashier's checks from and wire transfers through Advantage, Doe then disbursed those funds to other individuals and entities.

However, Studco disputes that it simply "fell for an e-mail scam." ECF No. 16-5 at 1; ECF No. 20-11 at 8. Studco alleges that Advantage and/or its employees knowingly assisted Doe in his scheme. Studco draws this inference from several facts. First, Advantage opened a personal checking account for Doe without taking any steps to verify Doe's personal information or identity. Second, all of the wire transfers sent by Studco to Doe's checking account were expressly identified as commercial transactions intended for Studco's supplier, not personal transactions intended for Doe, and yet Advantage accepted the transfers. Third, Doe hastily disbursed the large sum of money, with the help of Advantage, to entities that were clearly suspicious or fictitious. In addition, the disbursements "appear to have all occurred on similar days and at similar times and have other features that strongly support the knowing involvement of" Advantage and/or its employees. ECF No. 11 at 14. Fourth, after Studco uncovered the fraud, Advantage was not fully cooperative with Studco as it attempted to investigate Doe's fraud. From these and other facts,

Studco claims that Advantage's conduct went beyond the merely negligent to the intentional and criminal. Studco brings a variety of claims against Advantage and John Doe arising out of this alleged scheme. *See id.* at 20-32.

## DISCUSSION

In addition to alleging a lack of personal jurisdiction, Advantage argues that this case should be transferred to the Eastern District of Virginia—the district in which its operations are located. Because the Court agrees with Advantage on the issue of venue, it need not address the question of personal jurisdiction. *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) ("Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue, it is not required that courts do so. Courts may instead address venue applications at the threshold, when there is a sound prudential justification for doing so . . . ." (internal citations and quotation marks omitted)); *Copeland v. U.S. Dep't of Justice*, No. 15-CV-3569, 2015 WL 12831710, at *2 (S.D.N.Y. Oct. 5, 2015) (same).

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purposes of § 1404(a) are to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *O'Brien & Gere, Inc. of N. Am. v. Barton Rands, Ltd.*, 497 F. Supp. 2d 507, 510 (W.D.N.Y. 2007) (internal quotation marks omitted). Under § 1404(a), "[c]ourts first determine whether the action could have been brought in the prospective transferee district, and then consider whether transfer would be

appropriate." *Placek v. Shopoff*, No. 18-CV-4326, 2018 WL 4572253, at *3 (S.D.N.Y. Sept. 24, 2018). Courts consider several factors, including:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Id.* The district court has "wide latitude to decide whether to transfer venue." *Everlast*, 928 F. Supp. 2d at 742.

As an initial matter, Studco does not dispute that this case could have been brought in the Eastern District of Virginia. Advantage is a Virginia-based company located in that district. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").[1]

On the relevant factors, the Court concludes they favor the transfer of this case to the Eastern District of Virginia. As alleged, the fraudulent scheme was principally carried out through an Advantage location in Virginia; Doe's interactions with and assistance from Advantage employees occurred in Virginia; and Advantage's documentation of Doe's account activities is presumably in Virginia. Information and witnesses relevant to Studco's damages may be in New York, but the amended complaint suggests that the critical evidence is in Virginia, where the conspiracy between Doe and Advantage was effectuated.

Thus, the locus of the operative facts and the location of relevant documents and witnesses strongly favor litigating the case in Virginia. *See Everlast*, 928 F. Supp. 2d at 743 (noting that the convenience of witnesses is "the single most important § 1404 factor"); *Viacom Int'l, Inc. v. Melvin*

---

[1] For purposes of determining venue, the Court ignores John Doe, whose residence is unknown. *See Cummins v. Lollar*, No. 11-08081, 2011 WL 13134834, at *2 (C.D. Cal. Dec. 14, 2011) (declining to consider residence of unknown "John Doe" defendants in determining proper venue).

*Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district."). Put differently, while the Court recognizes that Studco was targeted and injured in New York and has chosen New York as its preferred forum, the "nerve center" of this case is clearly Virginia. *Accord Ritchie Capital Mgmt., LLC v. U.S. Bank N.A.*, No. 15-CV-8513, 2015 WL 1611391, at *4 (S.D.N.Y. Apr. 10, 2015) (Minnesota was proper venue, where plaintiffs alleged that "a Minnesota-based bank deliberately helped Minnesota-based businesses perpetrate a [Ponzi scheme]"); *see also Viacom*, 774 F. Supp. at 868 ("The core determination under § 1404(a) is the center of gravity of the litigation."). Furthermore, Studco does not allege that it would face any hardship or inconvenience if it were required to litigate this case in Virginia. *See* ECF No. 20-11 at 31-32 & n.12; *see also Everlast*, 928 F. Supp. 2d at 744 (noting that transfer may be appropriate so long as "the plaintiff would not be substantially inconvenienced by a transfer").

Accordingly, the Court agrees with Advantage that this case should be transferred to the Eastern District of Virginia.

## CONCLUSION

For the reasons discussed above, Advantage's motion to dismiss the amended complaint (ECF No. 16) is GRANTED IN PART and DENIED IN PART. The Clerk of Court shall transfer this case to the Eastern District of Virginia, Norfolk Division, and shall close this case. Advantage's first motion to dismiss (ECF No. 9) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: July 30, 2020
      Rochester, New York

                                                            HON. FRANK P. GERACI, JR.
                                                            Chief Judge
                                                            United States District Court